UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ARKADY MALAKHOV,

Defendant.

Case # 22-CR-6093

DECISION AND ORDER

## INTRODUCTION

On September 15, 2023, Magistrate Judge Mark W. Pedersen filed an amended Report & Recommendation ("R&R"), ECF No. 79, in which he recommended denying Defendant Arkady Malakhov's motion to sever. ECF No. 67. Defendant has filed his objection to the R&R, ECF No. 80, and the government has submitted its response. ECF No. 83. For the reasons that follow, Magistrate Judge Pedersen's amended R&R is ADOPTED, and Defendant's motion to sever is DENIED.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

1

**DISCUSSION**

The following facts are taken from the indictment, which alleges six counts against Defendant. ECF No. 31. At the time of the underlying events, Defendant was the CEO of Solid Cell, Inc. In December 2016, Defendant submitted a grant proposal to the National Science Foundation's "Small Business Innovation Research" ("SBIR") program, which fosters "technological innovation through the investment of federal research funds." *Id.* at 2. Defendant's proposed project was entitled "Integrated Thermoelectric Heat Exchange (iTEG-HX) for Carbon Neutral Electricity Production through Recovery of Cold Energy from Regasification of LNG." *Id.* at 3.

There are three phases to the program, and Phase I SBIR grants "are issued to support research and development with the aim of establishing the technical feasibility of an innovation." *Id.* One of the eligibility requirements for Phase I grants is that the "principal investigator" of the project must be primarily employed by the grantee business and must "have a legal right to work for the small business in the United States." *Id.* In April 2017, Defendant certified that he had confirmed that the individuals who would work on the project for Solid Cell, Inc. were authorized to work in the United States. *Id.* at 4. The indictment alleges that, in fact, Defendant not only knew that the principal investigator on his proposed project was not authorized to work in the United States, but "misrepresented and concealed" those facts from the National Science Foundation. *Id.*

In July 2017, the National Science Foundation awarded a $225,000 grant to Solid Cell, Inc. ECF No. 31 at 4. That month, Defendant requested, via the internet, $100,000 of the grant. *Id.* In his request, he falsely represented that the expenditures, disbursements, and cash receipts associated with his request for payment "were for the purposes and objectives set forth in the

solicitation, proposal, and award letter, and complied with the terms and conditions of the award." *Id.* Contrary to that representation, Defendant proceeded to use the money to "pay debts owed to others and expenses unrelated to the Project." *Id.* at 6. In his request, Defendant also "falsely represented that the principal investigator for the [p]roject was currently available and eligible to perform the proposed work." *Id.* at 5. In truth, at that time the principal investigator was neither in the United States nor authorized to work in the United States. *See id.* at 7. In August 2017, Defendant requested another $100,000 of the grant. *Id.* at 6. Defendant made the same false representations concerning the principal investigator as he did with respect to the July 2017 request, and he likewise used the money to pay debts and expenses unrelated to the project. *Id.* at 6-7.

The government alleges that Defendant used a portion of the grant money to "satisfy a past debt related to" a previous grant, which Defendant had received through the Department of Energy's Small Business Technology Transfer ("STTR") grant program. ECF No. 83 at 8. This program is similar in many respects to the SBIR grant program. One primary difference is that, in the STTR program, the grantee organization "must partner with a" research institution like a university, which must receive "a minimum of 30 percent [] of the award funds." ECF No. 77 at 2. Defendant's participation in the STTR program ended several months before he applied to the SBIR program. *See id.* at 3.

In October 2017, during an email exchange, Defendant disclosed to the National Science Foundation's program director that he had violated the SBIR grant's rules because his principal investigator did not have work authorization at the time the grant was awarded. ECF No. 31 at 7. Defendant did not inform the program director that the project had already received $200,000 and that he had "already spent most of those funds." *Id.*

3

The government alleges that, "[i]n approximately October 2017, the [National Science Foundation] received information that [Defendant] was engaging in fraudulent activity with the SBIR grant money." ECF No. 77 at 6. The National Science Foundation's Office of the Inspector General ("OIG") "began an investigation into [Defendant's] Solid Cell, Inc. bank accounts, which included disbursements from both the SBIR and STTR grants." *Id.* In the course of that investigation, OIG investigators met with Defendant and questioned him about his activities related to the SBIR and STTR grants. *Id.* at 9; ECF No. 80 at 6. After that interview, OIG issued a subpoena requesting "documentation related to both grants." ECF No. 83 at 7. In response, Defendant provided, among other things, "a spreadsheet reflecting payments to the University of Rochester"—the research institution with which Solid Cell, Inc. had partnered for the STTR grant. ECF No. 80 at 7; *see also* ECF No. 31 at 12. The spreadsheet purported to show that Solid Cell, Inc. had paid $47,188 to the University of Rochester "for its share of the [STTR] grant award," when in fact Defendant had withheld "$14,156.45 of the amount owed" to the university. ECF No. 31 at 12.

Five of the six counts in the indictment pertain to Defendant's alleged fraudulent actions in connection with the SBIR grant. Count 1, for wire fraud, covers the entire alleged scheme with respect to the SBIR grant. *Id.* at 8. In Counts 2, 3, and 4, the indictment alleges that Defendant violated 18 U.S.C. § 1001(a)(3) by knowingly submitting the false certification in April 2017, the false payment request in July 2017, and the second false payment request in August 2017, respectively. ECF No. 31 at 10-11; *see also* 18 U.S.C. § 1001(a)(3) (prohibiting a person from knowingly and willfully "mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictious, or fraudulent statement or entry"). In Count 5, the indictment alleges that, during his email exchange with the program director in October 2017, Defendant

violated 18 U.S.C. § 1001(a)(1) by "conceal[ing] or cover[ing] up" the fact that Solid Cell, Inc. had already received, and spent most of, project funds. *Id.* at 11.

Count 6 concerns Defendant's submission of the allegedly false spreadsheet to OIG during its investigation into the grants. The government alleges that Defendant knowingly misrepresented that the University of Rochester had been paid in full, and thereby violated 18 U.S.C. § 1001(a)(3) by submitting the false spreadsheet to OIG. *Id.* at 12.

## DISCUSSION

In June 2023, Defendant moved to sever Count 6 from the remaining counts for purposes of trial, pursuant to Federal Rules of Criminal Procedure 8(a) and 14(a). ECF No. 67. He argued that, insofar as Counts 1-5 pertain to the SBIR grant, and Count 6 to the STTR grant, they are "completely unrelated." ECF No. 67 at 9. Moreover, evidence related to Count 6 would have a prejudicial spillover effect on the remaining counts, as its only relevance would be to suggest that Defendant "committed an alleged fraud in the past and [] is therefore more likely [to do] so again." ECF No. 78 at 5. The government countered that all of the counts were "based on a common scheme to steal grant money from federal programs," ECF No. 68 at 8, and contended that evidence pertaining Count 6 was relevant to show "[D]efendant's intent to defraud" and "intent to conceal his crimes" with respect to Counts 1-5. *Id.* at 8, 10. Magistrate Judge Pedersen recommended denial of the motion to sever. ECF No. 71. After the government notified Magistrate Judge Pedersen of a factual error in its brief, ECF No. 74, he issued an amended R&R reaffirming its conclusion that Defendant's motion to sever Count 6 should be denied. ECF No. 79.

Defendant objects to Magistrate Judge Pedersen's amended R&R, reasserting his arguments that Counts 1-5 are "completely unrelated" to Count 6, ECF No. 80 at 9, and that joinder of Count 6 with Counts 1-5 would have a prejudicial spillover effect. *Id.* at 9-10. The Court

concludes that joinder is proper under Rule 8(a) and that severance is inappropriate under Rule 14(a).

    Rule 8(a) provides that

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

"Joinder is proper where the same evidence may be used to prove each count, or if the counts have a sufficient logical connection." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citation omitted). This is a "liberal standard for joinder." *United States v. Fishbein*, No. 21-CR-296, 2023 WL 2734428, at *2 (S.D.N.Y. Mar. 31, 2023).

    In this case, there is a sufficient logical connection between Counts 1-5 and Count 6. In Counts 1-5, Defendant is alleged to have made fraudulent misrepresentations in order to secure an SBIR grant, the proceeds of which he sought to use for personal expenses and debts. *See* ECF No. 31 at 5-7. Defendant applied those proceeds to, among other things, a debt associated with his prior STTR grant. *See* ECF No. 83 at 8. Thereafter, OIG investigated both of Defendant's grants. Faced with a subpoena seeking records related to both grants, Defendant provided a spreadsheet that falsely indicated that Defendant had paid the full amount owed to the University of Rochester under the terms of the STTR grant. *See* ECF No. 31 at 12; ECF No. 83 at 2. As the government alleges, this action not only constitutes a separate offense in itself, but also has a tendency to show Defendant's "intent to conceal his crimes." ECF No. 77 at 10. By falsely misrepresenting to OIG that he had complied with the relevant requirements of the STTR grant, it may be reasonably inferred that Defendant sought to avoid further investigative scrutiny by OIG, which was directed at *both* the SBIR and STTR grants. An offense that "depends upon" the "commission of the other," as where a defendant engages in another offense to conceal or cover up a prior offense, may be

properly joined with the prior offense under Rule 8(a). *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007) (internal brackets omitted); *see, e.g.*, *id.* ("[I]f a defendant is charged with fraud, the government may prosecute the defendant for fraud and for not paying taxes on the profits produced by the alleged fraud jointly."); *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985) (stating that "a conspiracy and its cover-up are parts of a common plan"); *United States v. Khandakar*, 955 F. Supp. 2d 268, 270 (S.D.N.Y. 2013) (concluding that defendants could be properly tried "jointly on charges of fraud and charges stemming from the failure to report the proceeds of that fraud [in Medicaid applications]"); *United States v. Gotti*, No. 02-CR-743, 2004 WL 32858, at *6 (S.D.N.Y. Jan. 6, 2004) (witness tampering charge properly joined in same proceeding as murder charge); *see also United States v. Stewart*, No. 09-CR-296, 2009 WL 4042696, at *4 (W.D. Mo. Nov. 19, 2009) (collecting cases and noting that a "variety of courts have sanctioned joinder of underlying substantive charges with additional charges arising out of post-charge or post-investigation conduct calculated to hinder prosecution or escape liability on the original charges"). Accordingly, joinder of Counts 1-5 with Count 6 was proper.

    Rule 14(a) states:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

"[T]he burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. The defendant must demonstrate that he suffered such prejudice as a result of the joinder, not that he might have had a better chance for acquittal at a separate trial." *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988).

Defendant argues that severance is warranted because evidence concerning the fraudulent spreadsheet would be inadmissible in a separate trial on Counts 1-5 alone, either pursuant to Rule 404(b) or Rule 403.  *See* ECF No. 80 at 10-11.  The Court disagrees.

Rule 404(b) states that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Ev. 404(b)(1).  However, such evidence "may be admissible for another purpose," including intent, knowledge, absence of mistake, or lack of accident.  Fed. R. Ev. 404(b)(2).  As stated above, evidence showing that Defendant knowingly proffered a fraudulent document to OIG while it was investigating both of his grants has a tendency to show Defendant's knowledge of, and lack of mistake concerning, his prior fraudulent misrepresentations in connection with the SBIR grant.  *Cf. United States v. Martinez*, No. 03-CR-1049, 2005 WL 8169393, at *3 (E.D.N.Y. May 25, 2005) (defendant's false statements about his income to probation officer admissible to show that defendant "knew that his wealth was illicitly obtained [through drug sales] and that he lied in order to conceal the true extent and source of his wealth").  Conversely, Defendant's fraudulent misrepresentations in connection with the SBIR grant provides a motive for his misrepresentation during the subsequent OIG investigation.  *See United States v. Fakih*, 264 F. App'x 78, 79-80 (2d Cir. 2008) (summary order) (where government's theory was that defendant's "participation in the credit card fraud scheme motivated him to tamper with a witness and interfere with a grand jury's investigation of that same credit card fraud," concluding that evidence of defendant's participation "in the underlying fraud" was admissible at trial for witness tampering).  Accordingly, the Court cannot conclude that Rule 404(b) would pose an obstacle to admission.  And, given the mutual relevance of these offenses, the Court is not convinced that application of Rule 403 would be appropriate under the

circumstances.[1]  *See* Fed. R. Ev. 403 (stating that evidence may be excluded only if its probative value "*is substantially outweighed* by a danger of . . . unfair prejudice" (emphasis added)).

Accordingly, Defendant has not met his "heavy burden of showing that joinder will result in substantial prejudice" as to justify severance under Rule 14(a).  *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted).  To the extent any lingering prejudice may exist by the joinder of Counts 1-6, "less drastic measures, such as limiting instructions, [] will suffice to cure any risk of prejudice."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Because Defendant has not shown that severance is warranted under Rule 8(a) or Rule 14(a), his motion must be denied.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Pedersen's amended R&R (ECF No. 79).  Defendant's motion to sever (ECF No. 67) is DENIED.

IT IS SO ORDERED.

Dated: November 6, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[1] As Magistrate Judge Pedersen mentioned in the amended R&R, these evidentiary issues are better resolved closer to trial, "when the Court can more accurately evaluate" the probative value of, and potential prejudice arising from, the relevant evidence.  ECF No. 79 at 12.  The Court's present ruling does not preclude the parties from revisiting these evidentiary issues closer to trial, should changed circumstances warrant reconsideration.